IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SAMUEL M. KIMBLEY                                                                         PLAINTIFF

v.                              CASE NO.        13-2133

CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                         DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g)*.*

### I.  Procedural Background:

The plaintiff filed an applications for DIB on July 27, 2009, alleging an onset date of February 20, 2009, due to plaintiff's spinal herniation, osteoarthritis in knees, neuropathy, depression and scoliosis. (T. 140).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on December 14, 2010.  Plaintiff was present and represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 44 years of age and possessed a high school education. The Plaintiff had past relevant work ("PRW") experience as a call center associate and retail sales. (T. 141).

On March 10, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's degenerative disc/joint disease, osteoarthritis, diabetes, obesity, hypertension, depression and anxiety did not meet or equal any Appendix 1 listing. T. 13-15. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work with additional limitations. T. 17. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the requirements of representative occupation such as machine tender, assembler, surveillance system monitor. T. 22-23.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the

decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

The ALJ determined that the Plaintiff's degenerative disc/joint disease, osteoarthritis, diabetes, obesity, hypertension, depression and anxiety were severe (T. 13) but that the Plaintiff could perform sedentary work[2] with additional restrictions. (T. 17).

---

[2]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary when carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

A.  **Development of the Record:**

The Plaintiff first argues that the ALJ failed to fully and fairly develop the record concerning the condition of his lumbar spine. (ECF No. 12, p. 8).

A Physical Examination was performed by Dr. Hoang on September 23, 2009.  During the examination Dr. Hoang noted that the Plaintiff had limited range of motion in the lumbar spine (T. 272) and could "hardly" walk on his heels or toes, and had a positive straight-leg test. (T. 373). Dr. Hoang also noted that the Plaintiff had "chronic low back pain associated with lumbar disc (T12-L1) herniation by history." (T. 374).  It does not appear that Dr. Hoang had any of the Plaintiff's past MRIs to review and was relying only on the oral history given to him by the Plaintiff.  Dr. Hoang was of the opinion that "if the disc herniation was confirmed his condition is physically disabling for any gainful employment." (T. 374).

The Plaintiff's MRI, performed in May 2006, showed a "small central focal disc protrusion at C6-7, C7-8, and T8-9 as well as a moderate focal and plate protrusion posteriorly on the right at T11-12 and a small focal disc protrusion posteriorly on the left at T12-L1". (T. 456). There is reference made to another MRI in 2001 but that medical document is not part of the record.

The Plaintiff testified that he had constant pain "throughout all my spine, into my hips, and my legs and knees." (T. 45).  He takes arthritis medication but it does not help with the pain. (Id.). He will recline during a good part of the day and when not reclining he uses a wheelchair. (T. 46).  He does do the cooking and laundry in the household. (T. 47). He does attend church but sits in his wheelchair for the service. (T. 48). The Plaintiff also testified as to numbness in his right arm which is his dominant arm. (T. 49).

Dr. Bill Owen with Arkansas Rehabilitation Services, in May 2009, felt that the Plaintiff's "limitations are chronic and vocationally significant" and that kneeling, pushing, pulling, climbing, and strenuous labor were to be avoided. (T. 368). In July 2009 Dr. Kyle Jarnagin, a chiropractor, felt that the MRI study of 2006 showed a "left parasagittal herniation at T12-L1 and that his knees showed bilateral osteoarthritis which was degenerative and would worsen over time. (T.367). In September 2009 Dr. Jarnagin was of the opinion that the Plaintiff "should be able to sit for extended periods of time" but would not be able to stand for more than 20-30 minutes as a time and could not walk more than 100 feet. (T. 424). X-ray of the left knee in 2010 showed only mild osteoarthritis but x-rays of the lumbar spine showed degenerative changes and mild anterior wedging at T12. . (T. 442). A non-examining consultive evaluation was performed in October 2009 which found the Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk, and sit for 6 hours in an 8-hour workday. (T. 378). The CE found no limitations on the Plaintiffs's ability to push and/or pull. (Id.). The CE also found only occasional Postural Limitations (T. 379) and no environmental limitations (T. 381).

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where

such failure is unfair or prejudicial").

The court is mindful that Dr. Jarnagin, a chiropractor, is not an acceptable medical source. Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. 20 C.F.R. § § 404.1513(a), 416.913(a) (2007). But since he is a chiropractor he does constitute an Other Medical Source. Medical sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2007). In fact, the ALJ discounted the opinion of the consultive physician and specifically incorporated the limitations proposed by Dr. Jarnagain. In his RFC determination the ALJ provided that the Plaintiff could "sit for six hours, at least two hours without interruption, and he can stand for two hours, about 20-30 minutes without having to sit" and that he could "walk about 100 feet without having to sit down". (T. 17)

In this case the determination of the Plaintiff's spinal condition is crucial. An MRI in 2006 showed a disc protrusion and it was imperative to determine if the Plaintiff's condition had worsened over time and if there was any nerve impingement. This could only be determined by another MRI. Dr. Jarnagin's opinion, coupled with the opinion of Dr. Bill Owen with Arkansas Rehabilitation Services, and the physical exam by Dr. Hoang in September 2009 demonstrates the need for additional medical evidence concerning the Plaintiff's back condition. There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994). In this case the court believes that remand is necessary to allow the ALJ to obtain an MRI of the Plaintiff's lumbar spine.

**B. Step Two Evaluation:**

Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) At step two of the sequential evaluation process, the claimant bears the burden of proving that he has a severe impairment. *Nguyen v. Chater*, 75 F.3d 429, 430-431 (8th Cir. 1996). An impairment or combination of impairments is not severe if there is no more than a minimal effect on the claimant's ability to work. *See, e.g., Nguyen*, 75 F.3d at 431. A slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities is not a severe impairment. SSR 96-3p, 1996 WL 374181 (1996); SSR 85-28, 1985 WL 56856 (1985).

The Plaintiff alleged neuropathy in his application (T. 140) and testified that he had numbness in his right arm (T. 49) and that use of his extremities increase the numbness (T. 54). The Plaintiff testified that he had difficulty with his grip due to the numbness and would use both hands to keep from dropping things. (T. 55). He uses a wheelchair at home, church and school. A doctor's note on February 6, 2009 shows the Plaintiff complaining that "both hands are numb" (T. 430) and on September 23, 2009 that he had numbness in his right index finger and thumb. (T. 434). The Plaintiff was prescribed Neurontin [3] 300 mg on October 28, 2009 and renewed in August 2010. (T. 472).

While the ALJ discussed the Plaintiff bronchitis (T. 13), probable Crohn's disease,

---

[3]Neurontin (gabapentin) is an anti-epileptic medication, also called an anticonvulsant. It affects chemicals and nerves in the body that are involved in the cause of seizures and some types of pain.  See www.drugs.com

Kidney stones, obstructive sleep apnea (T. 14), and hearing loss (T. 15) he makes no mention of the Plaintiff's neuropathy in making a severity determination. The ALJ does mention the Plaintiff's neuropathy in his RFC determination stating that "there is no evidence that he has associated neuropathy demonstrated by significant and persistent disorganization of motor function in his extremities, recurring acidosis or a visual impairment." (T. 20).

Dr. Owen, in May 2009, specifically found that the pushing and pulling were to be avoided by the Plaintiff (T. 368) but he made no limitations on his grasping or repetitive use of hands. (Id.). The pushing and pulling restriction appear to be centered around the Plaintiff's ability to use his legs and not any restriction on the use of his arms or hands. During the Plaintiff physical exam in September 2009 it was noted that he had no muscle atrophy, his neurological reflexes were normal, he could hold and write with a pen, pick up a coin, and had 100% grip strength. (T. 373).

While the ALJ should have discussed the Plaintiff's alleged neuropathy during step two of the decision the court finds no error with his determination that the alleged neuropathy in the Plaintiff's upper extremities was not severe.

**C. Residual Functional Capacity**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v.*

*Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

As pointed out above the court believes that the record should be more fully developed to provide for an updated MRI on the Plaintiff spine to allow the ALJ to make a proper determination of the Plaintiff RFC.

### IV.  Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this June 27, 2014.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE